THE PROTECTOR.

(District Court, E. D. South Carolina. December 3, 1909.)

COLLISION (§ 122*)—MOORED AND MOVING VESSEL—PRESUMPTION OF FAULT.

Where a lighter, engaged in raising a tug which had sunk at a wharf, and to which one end of a line passed under the tug was made fast, was so placed as to be in the way of vessels brought to the wharf, and two tugs, employed to dock a schooner, shoved her against the lighter, causing the sunken tug, which had been partly raised, to drop back, the happening of the accident under such circumstances was not of itself evidence of fault on the part of the tugs; and, in the absence of evidence that they failed to exercise ordinary care and skill, they cannot be *held* liable therefor.

[Ed. Note.—For other cases, see Collision, Cent. Dig. § 257; Dec. Dig. § 122.*]

In Admiralty. Suit by C. H. Yaeger, as owner of the steam tug Buck, against the steam tug Protector. Decree for respondent.

Nathans & Sinkler and G. H. Momeier, for libelant.
Mitchell & Smith, for respondent.

BRAWLEY, District Judge. The libel is for damages inflicted upon the steam tug Buck by the steam tug Protector during the progress of operations for the raising of the Buck, which had been sunk at Johnson's Wharf in the port of Charleston. The Buck, a small steam tug, of which Messrs. Dingle and Webb were owners since the year 1902, was sunk at Johnson's Wharf in January, 1909. She had been bought for $1,750 in the year first mentioned, and her life had not been a successful one; the testimony showing that she had been sunk six or seven times. The testimony shows that her owners, after inquiry as to the cost of raising her, concluded that her value when raised would not repay the expense incurred, and practically abandoned her, selling her as she lay, about the end of August, to C. H. Yaeger for the nominal sum of $5. Men of large experience and reliable have testified that in her then condition she had no value whatever; but the libelant, who had had some experience as a diver and some as a prize fighter, evidently was of opinion that the raising of her would be a successful speculation. The weight of the testimony is that the speculation could not in any event have been a successful one. The Buck was about 12 years old, had been lightly built of wood, had been repeatedly sunk, and that bad luck which sometimes attends even things inanimate had pursued her.

C. H. Yaeger and his associates obtained a lighter, and about September 4th went down and made an examination of the condition of the boat, which was buried in the mud. He was unable to pass a chain under the keel or under the shaft, and a chain was passed underneath the counter forward of the rudder shoe, fastened at one end to the port bits of the lighter, and at the other end to the wharf. The testimony is that the counter had little strength, and was easily liable to be torn off, and obviously the safer method of raising her would have been to pass the chain under the keel. The Buck had been lifted a little by

September 8th, and was partially suspended between the wharf and lighter, when the owner of the wharf employed the tug Protector to dock the schooner Bayard Barns, laden with coal destined for his wharf. The position of the lighter, near the end of the wharf, was a serious obstruction to the docking of the schooner, and Capt. Igoe, the master of the Protector, was reluctant to undertake it, with prophetic ken foreseeing that, if any accident occurred to the lighter in the process of docking the schooner, he would be held responsible. The owner of the wharf thereupon agreed, as an extra precaution against such contingency, to employ another tug to assist in the operation, and the tug Waban was employed. In the process of docking the schooner, she was shoved against the lighter, moving her a few feet. The touch seemed to have been a slight one, causing no damage to the lighter or to the schooner; but the lines holding up the Buck were dislodged, and she fell back into the mud.

No testimony was offered by the libelant tending to show any specific negligence or want of skill on the part of the tugs engaged in the docking of the Bayard Barns, and the case for the libelant rests upon the doctrine that, when a vessel moored is struck by a moving vessel, this is prima facie evidence of negligence on the part of the moving vessel. As a general proposition this is sound; but I do not conceive it applicable in the peculiar circumstances of this case. The act of Congress of March 3, 1899 (30 Stat. 1152, c. 425, § 15 [U. S. Comp. St. 1901, p. 3543]), makes it unlawful to tie up or anchor craft in navigable channels so as to obstruct the passage of other craft; and while I do not hold that the lighter was unlawfully where she was, yet it is obvious that she was an obstruction to free navigation. The schooner Bayard Barns, consigned to Johnson's Wharf, had the right to go there; and if the tugs Protector and Waban were managed with ordinary skill and prudence, and in the operation of docking an accident occurred, the mere fact of the accident cannot of itself be imputed as a fault.

Some of the remarks of Judge Brown in the case of The Alfred (D. C.) 59 Fed. 795, seem applicable. In that case a derrick, anchored in the channel of the East River under a permit from the Secretary of the Treasury, and occupied in raising a sunken vessel, was damaged by steam tugs. It was held that the raising of sunken vessels was legitimate and lawful, and that her position in the channel way, though lawful, added greatly to the difficulties of navigation by other vessels, and the court says:

"Those vessels were doubtless required to use skill and diligence to avoid the derrick and each other; but they were not otherwise answerable for the results, and in determining whether skill and diligence have been exercised the mere fact of collision with the derrick in a place like this is not such prima facie evidence of negligence as in the ordinary case of a collision with a wharf or with a vessel moored at a wharf, or upon ground out of the channel way and set apart for anchorage. Considering all the circumstances * * * I am of opinion that neither of the tugs was lacking in reasonable diligence and skill from the time when the danger of collision became appreciable, and that no specific fault is established against either. * * * Since the event, no doubt, modes can now be pointed out by which the collisions might have been avoided."

The Etruria (D. C.) 88 Fed. 555, is to the same effect.

While it cannot be said that the collision was an "inevitable accident," in the sense that it was due to the uncontrollable fury of those forces of nature which no human foresight could have prevented, yet in the admiralty law this is considered as a relative term to be construed, not absolutely, but reasonably, with regard to the circumstances of each particular case. In The Grace Girdler, 7 Wall. 196, 19 L. Ed. 113, the court says:

"Inevitable accident is where a vessel is pursuing a lawful avocation in a lawful manner, using the proper precautions against danger, and an accident occurs. The highest degree of caution that can be used is not required. It is enough that it is reasonable under the circumstances."

In The Jumna, 149 Fed. 171, 79 C. C. A. 119, the Circuit Court of Appeals of the Second circuit, quoting the case just cited and others, says:

"The test is: Could the collision have been prevented by the exercise of ordinary care, caution, and maritime skill? In the case at bar we are unable upon the testimony before us to specify any particular fault, to put our finger upon any act or omission, and assert that to it the accident was attributable. Fault may exist, but we are unable to discover it. It is inscrutable. Where the evidence is so conflicting that it is impossible to determine to what direct and specific acts the collision is attributable, it is a case of damage arising from a cause that is inscrutable. Whether the case at bar be thus classified, or whether it be held to come within the admiralty definition of inevitable accident, is not material. In either event the loss must be borne by the party on whom it falls."

The testimony abundantly shows that the master of the Protector, a skillful officer of large experience, was fully advised of, and that he fully appreciated, the difficulty and danger attending the docking of the Bayard Barns, and for that reason he was unwilling to undertake the job without the assistance of another tug. Extra expense was incurred, and so far as the testimony shows all proper precautions against danger of collision were taken. There is no testimony whatever tending to establish any specific negligence or any lack of the ordinary care and caution which the circumstances demanded. The libelant brought this case into court, and the burden of proof rests primarily upon him. He has offered no proof, but rests his case upon the presumption that, as his lighter was moored, the moving vessel was at fault, losing sight of the fact that his lighter was moored in a position where she was an obstruction to navigation, and that the Protector, in the performance of her lawful calling, had the right to use those waters, provided she exercised ordinary skill and caution. I am not persuaded that there was any such lack of skill and caution that would demand condemnation. If I was, I should have great difficulty in fixing any just measure of damages; the weight of the testimony being that the only thing of value in the Buck was her engines and boiler, which were not injured by the collision. Any other value is purely speculative.

The libel is dismissed.